## GORHAM et al. v. MONTFORT.

1. Testimony of a witness that he received a letter from the clerk of the superior court touching the result of the clerk's investigation of the records in his office is hearsay evidence and inadmissible.

2. In a suit by an administrator in possession of land to enjoin a trespass upon the land, it can not be said that the grant of letters of administration to him is void as matter of law solely because more than twenty years elapsed from the death of the decedent to the issuance of letters of administration on his estate.

3. The evidence examined and held to demand a finding that the deed attacked as a forgery was not a genuine instrument.

     NOVEMBER 16, 1911.

Equitable petition. Before Judge Whipple. Wilcox superior court. November 19, 1910.

*E. H. Williams* and *Hal Lawson,* for plaintiffs in error.

*Haygood & Cutts,* contra.

EVANS, P. J.   O. T. Montfort, as administrator of M. A. Bentley, filed his petition against Walter M. Gorham et al., praying to enjoin the defendants from interfering with the possession of lot of land number 33 in the 12th district of originally Dooly, now Wilcox county, and to cancel a certain deed as a cloud upon his title. It was alleged in the petition: that the plaintiff was in possession of the land, and claimed title thereto under a grant from the State to his intestate, dated May 20, 1846; that the title on which the defendants based a pretended claim began with what purported to have been a deed made by M. A. Bentley to Robert S. Waters, dated July 1, 1854, and they claimed to have mesne conveyances from Waters to themselves; that the deed purporting to have been made by M. A. Bentley to Robert S. Waters was a forgery; that it was never executed by M. A. Bentley and never did purport to have been executed by him, but on the contrary was originally written as having been executed by M. A. Bentley by a certain other person as his attorney in fact, but if such other person ever wrote the deed, he had no power of attorney to execute it; and that some person claiming under the deed, knowing that no proof could be made of the power of attorney, struck from the deed the words "by his attorney in fact," and the name signed to the deed as attorney in fact, so as to leave the deed purporting to have been executed by M. A. Bentley.   The defendants filed answers; all of them disclaimed title, except Gorham, who, as surviving partner of Henry Lewis & Company, claimed to have title to the land and to have been in the continuous possession of it for about fifteen years. They denied the plaintiff's title, and averred him to be a trespasser on the land.   The plaintiff filed an affidavit of forgery relative to the deed attacked for forgery in his petition.   On the trial the parties stipulated: that the land was originally granted by the State to M. A. Bentley on May 20, 1846; that the plaintiff was in possession at the time of bringing the suit, and that he should proceed by making out a prima facie case, and after that was done, then, upon a tender in evidence by the defendants of the deed purporting to have been made by M. A. Bentley to Robert S. Waters on July 1, 1854, there should be a separate trial as to the issue of forgery as provided under the law for the trial of forgery as a separate issue. The plaintiff put in evidence his application for administration on the estate of M. A. Bentley, and letters of administration granted

thereon of date of April 7, 1902. The defendants then tendered in evidence an original deed, the same purporting to have been made by Myron A. Bentley to Robert S. Waters, dated July 1, 1854, conveying the land in controversy, and purporting to have been executed in Clarke county, Georgia, in the presence of H. H. Dean, J. P., and George K. Smith. Upon the coming in of this deed an issue of forgery was made up, and upon the issue the plaintiff read the testimony of Charles L. Bentley, taken by interrogatories, to the effect: that he was a resident of Hall county, 48 years old, and was the son of O. S. Bentley, who died in 1889; that Myron A. Bentley and O. S. Bentley were brothers; that M. A. Bentley died in 1854; that upon inspection of the deed made by M. A. Bentley to Robert S. Waters, witnessed by George K. Smith and H. H. Dean, J. P., conveying land lot 33 in the 12th district of Dooly county, Georgia, the witness declared the written parts of the same to be in the handwriting of his father, O. S. Bentley; that he had also examined other deeds purporting to have been made by M. A. Bentley, by his attorney in fact O. S. Bentley, to Robert M. Braden, conveying different lots of land, and purporting to have been executed on August 11, 1854, and these deeds were in the handwriting of O. S. Bentley, and the signature to these deeds is the same signature as that on the deed from M. A. Bentley to Robert S. Waters; that he was interested in the recovery to the extent of one sixth; that he had never paid any taxes on the land; and that Montfort was appointed administrator at the instance of his aunt, Mrs. Denison. M. B. Cannon testified, that he saw the original deed purporting to be from Myron A. Bentley to Robert S. Waters; at the time he saw the deed it purported to have been signed by Myron A. Bentley, by his attorney in fact O. S. Bentley, and that it had since been changed by being torn or mutilated. This deed was in the possession of the witness who was attorney for Henry Lewis & Company (the defendant in the present suit being the surviving partner of that firm), who claimed title under it in a suit then pending in Wilcox superior court against A. J. Connor and Mrs. Sangster. A deed made by Myron A. Bentley, by his attorney in fact O. S. Bentley, executed in Clarke county, Georgia, July 1, 1854, conveying lot of land number 36 in the 12th district of Dooly county to Robert S. Waters, said deed being witnessed by George K. Smith and H. H. Dean, J. P., duly recorded, and being upon the same blank

and printed form as that of the deed upon which the issue of forgery is made, produced by the clerk of the superior court under a subpœna duces tecum, and identified by J. W. Haygood, was put in evidence. The defendant offered J. L. Bankston, who testified: that he was an attorney at law and the agent representing Henry Lewis & Company; that to him was entrusted the sale of the lands belonging to them in Wilcox county; that some of the title papers of Lewis & Company were incomplete, and among them was the title under which the land in controversy is claimed by Gorham as surviving partner of Lewis & Company; that he examined through the old deed books of Wilcox county, page by page, trying to find a record of the power of attorney from M. A. Bentley to O. S. Bentley, and also made search in other places, but was unable to find the original or record of any power of attorney from M. A. Bentley to O. S. Bentley. J. W. Haygood, in behalf of the defendant, testified that in connection with the Bentley cases he had occasion to examine the records in Wilcox and Dooly counties, and had never seen the record of any power of attorney from M. A. Bentley to O. S. Bentley, and that he knew the signature of M. A. Bentley to the deed attacked was in the handwriting of O. S. Bentley. Eldridge Cutts, for the defendant, testified that he had never had occasion to examine the records in search of any power of attorney from M. A. Bentley, and that O. T. Montfort, the administrator, was in possession of the land a few months prior to the filing of the present suit. Upon the conclusion of the evidence the court directed a verdict finding the deed attacked to be a forgery. A motion was made for a new trial, complaining of the rejection of certain testimony, and of the direction of a verdict on the issue of forgery. The motion was overruled.

1. The court rejected the following testimony of the defendants' counsel: "I was connected with the defense of this case at the first trial, after which my connection ceased. I was attorney for the defendants. In preparing the case for trial I made a search for the power of attorney authorizing O. S. Bentley, as attorney in fact for M. A. Bentley, to execute the deed now attacked as a forgery. I applied to the clerk of the superior court of Dooly county for a certified copy of such power of attorney from his records, and he failed to furnish such certified copy, stating by letter that he could find no such paper upon record." This testimony was

ruled out on the ground that it was hearsay. Manifestly it was hearsay in the sense that it was oral testimony concerning the contents of a writing which was neither produced nor accounted for.

2. It is contended that it was error to direct a verdict, because the plaintiff failed to make out a prima facie right to sue; the contention being that the lapse of forty-eight years from the death of M. A. Bentley to the grant of the administration on his estate afforded a presumption of law that the estate had been lawfully adminis-. tered, and therefore that the grant of letters of administration on M. A. Bentley's estate to the plaintiff was speculative and void. This point was raised in the case of *Bullock* v. *Dunbar,* 114 *Ga.* 754 (40 S. E. 783), where it was ruled: "The old doctrine that a defendant in possession should be protected against an action instituted by the administrator of him who died clothed with the legal title to the property in dispute, when it appeared that the administration was stale and had been obtained for fraudulent or speculative purposes, did not apply in any case where the defendant's possession had not been of sufficient duration to support a title in him by prescription. The provision in the limitation act of 1856, that 'a prescription does not run against an unrepresented estate until representation, provided the lapse does not exceed five years,' was curative of the evil which rendered it necessary before the passage of that act to invoke the doctrine referred to above." We are asked to review and overrule this case, but, upon consideration and examination, we adhere to this ruling and decline to overrule it. There was no evidence that the defendants had been in possession of the land, so as to support a prescriptive title.

3. It is further contended that the evidence was insufficient to show the deed to be a forgery. Notwithstanding the deed purporting to have been made by M. A. Bentley to Robert S. Waters had never been recorded, it was stipulated between the parties that the collateral issue of its forgery should be tried separately from the main case. Civil Code (1910), section 4210, is designed to supply a statutory remedy for determining the question as to whether a registered deed offered in evidence is or is not genuine. It has no application to an unregistered deed. *Payne* v. *Ormond,* 44 *Ga.* 515. Therefore we will consider the effect of the testimony independently of the statute. It is undisputed that the title to the land is in the plaintiff unless this deed is genuine. The plaintiff is in possession

of the land. The defendant, some time prior to the present suit, had a litigation with a third person over the very same land, and in that litigation he based his claim of title upon this same deed, which at that time did not purport to have been executed personally by M. A. Bentley, but did purport to have been executed by O. S. Bentley as attorney in fact for M. A. Bentley. When introduced in evidence in the present suit the deed was found to have been altered so as to make it appear to have been the personal deed of M. A. Bentley. No explanation is offered as to how, or by whom, the alteration was made, although the deed appears all the while to have been in the custody of the party who claims under it. The nature of the alteration shows that it was designedly done. As it did not appear that the deed was in the control or possession of any person other than the defendants, and as it did appear that they made fruitless effort to discover the power of attorney from M. A. Bentley to O. S. Bentley for the purpose of completing the deed as a muniment of title, and that they were claiming the land under the mutilated deed, and the nature of the mutilation being such as to entirely change its character, the conclusion is irresistible that the alteration was fraudulent and with the intent to prejudice the rights of the true owner. No presumption of fact can arise in favor of a person out of possession of land that the deed was made pursuant to a valid power of attorney, simply because a long interval of time has elapsed since the date the deed is alleged to have been executed. On the contrary, the facts demanded an inference that the spoliation of the deed is attributable to the defendants, and the rule is that every inference is to be drawn against a party to a suit guilty of mutilating documentary evidence. Hayes *v.* Davis, 82 Mo. 209; 1 Starkie on Ev. (3d ed.) 564; 1 Wigmore on Ev. § 278. The fraudulent alteration of a deed by erasure, mutilation, or addition, with intent to prejudice the rights of another, will constitute forgery, if the alteration so made may have the effect intended. 13 Am. & Eng. Enc. Law (2d ed.), 1090. The deed in its present form purports to have been executed by M. A. Bentley; there is nothing upon its face to show the contrary. The proof is uncontradicted that it was never executed by M. A. Bentley, and we think the evidence demanded a finding that it be declared to be a forgery.

*Judgment affirmed. All the Justices concur, except Beck, J., absent, and Hill, J., not presiding.*