## ROGERS *v.* MANNING.

No. 15482. JUNE 6, 1946.

848

*Douglas F. Thomas* and *J. B. Moore,* for plaintiff.
*W. Glenn Thomas* and *Joe Thomas Jr.,* for defendant.
ATKINSON, Justice. (After stating the foregoing facts.)
The first special ground of the motion for new trial complains

of the admission in evidence of a letter, dated April 12, 1945, from Fred Baywell in Boonville, Indiana, to one of the attorneys for the defendant, which stated the following: "Mr. William Baywell stayed with me a number of years before his death. He has been dead over two years. I remember Mr. Baywell telling me, . . about the land he purchased in 1913 from S. E. Georgia Land Company in Wayne County Georgia. He paid taxes every year, until Mrs. Manning bought the land in 1939. The only correspondence he has was from the Tax Commissioner of Wayne County and Mrs. Manning that I know of. I know that he never sold the land to no one else but Mrs. Manning. He sent her the deed . . he got from the S. E. Georgia Land Company."

The letter was inadmissible when offered in evidence, over the objection of the plaintiff that it was irrelevant, prejudicial, hurtful, and hearsay. *Clarke* v. *Alexander,* 71 *Ga.* 500 (5); *Hickson* v. *Bryan,* 75 *Ga.* 392; *Gorham* v. *Montfort,* 137 *Ga.* 134 (72 S. E. 893); *Aripeka Saw Mills* v. *Georgia Supply Co.,* 143 *Ga.* 210 (84 S. E. 455); *Carrie* v. *Carnes,* 145 *Ga.* 184 (6) (88 S. E. 949); *Owen* v. *Groves,* 145 *Ga.* 287 (6) (88 S. E. 964); *Peters* v. *Adcock,* 196 *Ga.* 118 (5) (26 S. E. 2d, 342). However, the illegal admission of the letter in evidence was harmless and therefore will not require a reversal, for the reason that other witnesses were allowed to testify without objection to substantially everything that was stated in the letter. Compare *McCrory* v. *Grandy,* 92 *Ga.* 319 (4) (18 S. E. 65); *Waters* v. *Wells,* 155 *Ga.* 439 (4) (117 S. E. 322); *Lewis* v. *State,* 196 *Ga.* 755, 759 (27 S. E. 2d, 659); *Daughtry* v. *Savannah &c. Ry. Co.,* 1 *Ga. App.* 393 (3) (58 S. E. 230); *Christopher* v. *Georgian Co.,* 22 *Ga. App.* 707 (2) (97 S. E. 97). On the question as to whether hearsay as to death is admissible, see *Imboden* v. *Etowah &c. Mining Co.,* 70 *Ga.* 86 (9); *Mobley* v. *Baxter,* 143 *Ga.* 565 (85 S. E. 859).

█ Special grounds 2 to 7 inclusive except to the refusal of timely written requests to charge. "A request to charge should in itself be correct, and even perfect; otherwise the refusal to give it will not be cause for a new trial. *Etheridge* v. *Hobbs,* 77 *Ga.* 531." *Macon, Dublin & Savannah R. Co.* v. *Joyner,* 129 *Ga.* 683 (5) (59 S. E. 902); *Lewis* v. *State,* 196 *Ga.* 755 (3), 760 (27 S. E. 2d, 659). "A party can not complain that the court erred in failing to deliver in specified language a charge, when such charge.

if given in the language specified, would not be an accurate statement of the law." *McElwaney* v. *MacDiarmid,* 131 *Ga.* 97 (5) (62 S. E. 20) ; *Hardeman* v. *Ellis,* 162 *Ga.* 664, 667 (26) (135 S. E. 195) ; *Armstrong* v. *State,* 181 *Ga.* 538 (4) (183 S. E. 67) ; *Smithwick* v. *State,* 199 *Ga.* 292 (4) (34 S. E. 2d, 28). But, in the trial of a case, a party may make a written request to charge the jury at any time before the jury retire to consider their verdict; and if the charge requested in writing is on a material point and is pertinent, it should be given in the language requested, and a refusal to give it in the language requested is cause for the grant of a new trial. Code, §§ 70-207, 81-1101; *Wooten* v. *Morris,* 175 *Ga.* 290, 293 (4) (165 S. E. 626).

Ground 2 complains of the refusal to charge: "A prescriptive title which meets the requirements prescribed by the Code will not be defeated by the fact that the grantor, through whom the claimants of prescription held, had made a deed prior to that under which they claimed, even though it was of record." While this request is taken from decisions of this court in *Hunt* v. *Pond,* 67 *Ga.* 578 (6) ; *Baxter* v. *Phillips,* 150 *Ga.* 498, 503 (104 S. E. 196), the language, "a prescriptive title which meets the requirements prescribed by the Code," without setting forth in such request what the requirements of the Code were, would have been an incomplete statement of the law.

The requested charge in ground 3 was: "Possession of land is notice of whatever right or title the occupant has. Possession by the husband with the wife is presumptively his possession but may be rebutted. Actual possession is notice to the world of the right or title of the occupant." The first two sentences of this request are in the language of the Code, § 85-408, and the last sentence is apparently taken from *Simpson* v. *Ray,* 180 *Ga.* 395 (2) (178 S. E. 726). The second sentence, "Possession by the husband with the wife is presumptively his possession, but it may be rebutted," was not properly adjusted to the facts of the instant case, where the plaintiff claimed that his possession was notice to the defendant, who was a woman, and there was no evidence showing that the plaintiff's wife had ever been in possession of the land in question. The assignment of error is to the refusal to give the whole of the above request; and since a portion of the charge was not applicable to this case, the court committed no error in

refusing the request. Compare *Etheridge* v. *Hobbs, 77 Ga.* 531, 534 (4) (3 S. E. 251).

The request to charge in ground 4 was: "The payment of taxes is not enough to constitute any adverse possession, neither will the payment of taxes prevent or obstruct adverse possession in another party, who has actual adverse possession of land." This request appears to have been taken from language in *Mitchell* v. *Gunter,* 170 *Ga.* 135, 146 (152 S. E. 466), where it was held that the trial court did not err in charging "that to give in and pay taxes on property is not evidence itself of title to the property, but that it is a circumstance to show possession." While the trial judge in his general charge did not specifically refer to the fact that payment of taxes is not of itself evidence of title, this principle was necessarily included in the enumeration of the things which if the jury found to be true they were instructed to find in favor of the plaintiff. See, in this connection, *Chamblee* v. *Johnson,* ante, 838.

The request to charge in ground 5 was: "Adverse possession of lands under written evidence of title, for seven years, shall give like title by prescription, but if such written title is forged or fraudulent, and notice thereof is brought home to the claimant, before or at the time of the commencement of his possession, no prescription shall be based thereon." This request is in the language of the Code, § 85-407. The words, "but if such written title is forged or fraudulent, and notice thereof is brought home to the claimant before or at the time of the commencement of his possession, no prescription shall be based thereon," were not applicable to the instant case, for the reason there was no evidence as to forgery or fraudulent acts. What is said above is not in conflict with *Butler* v. *Lovelace-Eubanks Lumber Co., 37 Ga. App.* 74 (139 S. E. 83), where it was held that, although the part of the Code, § 85-407, as to title by prescription, which relates to forged or fraudulent deeds, was not applicable to the case on trial, the charging of that section could not have harmed the plaintiff and was not cause for a new trial.

The request to charge in ground 6 was: "Any writing which upon its face professes to pass title to realty, but which does not do so, either from wanting title in the person making it, or from a defect in conveyance, but which defines property purported to be

conveyed, is sufficient to constitute a color of title." This request was taken from the decisions in *Beverly* v. *Burke,* 9 *Ga.* 440, 443 (2) (54 Am. D. 351) ; *Street* v. *Collier,* 118 *Ga.* 470 (45 S. E. 294) ; *Turner* v. *Neisler,* 141 *Ga.* 27 (6) (80 S. E. 461) ; *Byrom* v. *Riley,* 154 *Ga.* 580 (114 S. E. 642) ; *Gooch* v. *Citizens & Southern Bank,* 196 *Ga.* 322 (2) (26 S. E. 2d, 727).

The request to charge in ground 7 was: "That a color of title with more than seven years adverse possession is a stronger title, and will prevail over a perfect paper title with no possession." This request was based on the decisions in *Baxley* v. *Baxley,* 117 *Ga.* 60 (3) (43 S. E. 436) ; *Godley* v. *Barnes,* 132 *Ga.* 513 (64 S. E. 546).

While the trial judge did not use the language requested, as set forth in the 6th and 7th grounds, his general charge sufficiently covered the effect. of color of title as applied to the facts of the present case.

In so far as any of the above requests to charge were properly adjusted to the pleadings and the evidence, they were sufficiently covered by the charge as given.

■ Special grounds 8, 9, and 10 complain of the following portions of the charge: (a) "The court says further to you in this connection that, if you find that the contentions of the plaintiff, W. C. Rogers, are true, that if he bought the land in 1926 and bought it in good faith, believing that in doing so that the deed executed to him by the Brunswick Peninsula Company conveyed the title to the said land to him, and that, if you should further find that he had no actual knowledge that the paper title was vested in William Baywell, and you should further find that he entered into possession under his deed in good faith, believing that he was the owner of the land, and that he remained in possession of the land, as contended by him, from [the] year 1927 to the last of the year 1939, and should further find that his possession of the said land was quiet, peaceable, open, continuous, and adverse in his own right, and should find that it was of such nature as to notify other people that he was claiming said land, that is to say, if you should find that he used it for turpentine purposes continuously during this period of time, and in doing so he chipped and dipped and raked it, and this work continued for the greater part of the year, then under those circumstances

his title to the land would ripen by prescription, and the plaintiff would be entitled to recover the land from the defendant." (b) "On the other hand if you should find that the plaintiff, W. C. Rogers, in the year of 1926 [1927?] took the deed from the Brunswick Peninsula Company with the knowledge that there was an outstanding paramount title vested in the predecessor of Mrs. Agnes Manning, the defendant, or if you should find that he did not take the deed in good faith, and you should find that he remained in the possession of said land knowing that he was not acting in good faith, and knowing that there was an outstanding deed to this land which vested the title in another person, then under those circumstances his title would not ripen by prescription, and he would not be entitled to recover against the defendant." (c) "The court further says to you that, if you should find that the plaintiff acted in good faith, and that he entered upon the said land believing that he was the owner thereof, but, if you should find that his possession was not continuous, or was not open or peaceful or not adverse, then under those circumstances the title would not ripen by prescription, and he would not be entitled to recover against the defendant." (d) "Before this title would ripen by prescription and before he would be entitled to recover the land, it must appear that he not only acted in good faith and that he purchased the land ignorant of the fact that there was an outstanding deed executed to the predecessor in title of Mrs. Agnes Manning, the defendant, and that he remained in possession thereof in good faith, but it must appear that he was occupying this land in his own right." (e) "It must further appear that his possession of the land was quiet and peaceable and that his possession was quiet and peaceable, and that the possession was continuous, or in other words, if his possession during all of that period of time was interrupted or if he failed to remain in possession continuously for seven years, then the title to the said land would not ripen by prescription and he would not be entitled to recover against the defendant."

The portion of the above charge designated as (a) was not erroneous, as complained of in ground 8, because it was not sound as an abstract principle of law. Nor was the entire excerpt from the charge erroneous, as complained of in ground 9, for the alleged reasons: (1) That it was argumentative and tended to em-

phasize that the plaintiff had only one way to recover as against three ways not to recover, in that in the first excerpt there was only one proposition stated whereby he could recover, and in the three following excerpts lengthy descriptions were given whereby the plaintiff could not recover; (2) the charge was confusing and misleading; (3) in the first excerpt the necessary instruction was given in behalf of the plaintiff for prevailing, while in the following three excerpts there was much more instruction showing whereby the plaintiff should not recover.

The 10th special ground complains of the excerpt from the charge designated as (e). The criticism is: the evidence supported the contention that the plaintiff had been in possession of the land partly in person, and the greater part of the time by tenants, and the charge tended to exclude from the jury any consideration of the time when the land was occupied by the plaintiff's tenants, in the ripening of his title by prescription.

There is no merit in this ground. While it is the duty of the court to instruct the jury as to the law applicable to every material issue in the case, even in the absence of any request (*Investors Syndicate* v. *Thompson,* 172 *Ga.* 203 (2b), 158 S. E. 20), in the present case there was no contention that the possession of the plaintiff's tenants was not his possession. Futhermore, the language in excerpt (a), that if the jury "should find that he used it [the land] for turpentine purposes continuously during this period of time, and in doing so he chipped and dipped and raked it, and this work continued for the greater part of the year, then under those circumstances his title to the land would ripen by prescription, and the plaintiff would be entitled to recover," clearly shows that the jury were instructed to give the plaintiff credit for the possession of his tenants, in the ripening of his title by prescription.

■ The next question is whether the evidence was sufficient to support the verdict for the defendant. The uncontroverted evidence showed that the plaintiff purchased the land in 1927, and that he worked it for turpentine purposes until 1940. In this connection the court properly instructed the jury that, insofar as the paper title was concerned, the title of the defendant was superior to that of the plaintiff, but that the plaintiff's claim was based upon a title by prescription. The plaintiff testified that, when he

bought the land, he did not know there was any outstanding title, and that he did not know William Baywell at that time, but learned in 1940 that the defendant had bought the land from Baywell. The plaintiff is seeking to recover in a statutory suit for land, and while the defendant's husband who bought the land for her testified that, before making the purchase in 1939, he asked the plaintiff who owned the property, to which the plaintiff replied, William Baywell, the answer did not aver that the defendant or her husband acted on the strength of such statement, or that the plaintiff under equitable principles was estopped on account of the statement from denying that William Baywell was the owner. Neither the defendant nor her husband testified that the plaintiff told them that he knew of the outstanding title before or at the time he purchased the land in 1927.

"When an adverse possessor has held for the requisite period and his prescriptive title ripens, it extinguishes all other inconsistent titles and itself becomes the true title." Powell on Actions for Land, 459, § 349; *Danielly* v. *Lowe,* 161 *Ga.* 279 (3) (130 S. E. 687). "When a party claims adversely, it is not necessary for him to show that he went into possession bona fide, but the burden of showing fraud is upon the opposite party." *Reynolds* v. *Smith,* 186 *Ga.* 838, 842 (199 S. E. 137).

Under the uncontroverted evidence in the present case, the plaintiff purchased the property in 1927, and did not learn of the outstanding title until some time prior to 1939. In 1927, upon purchase by the plaintiff, he entered into possession, which was not questioned until 1940. All the elements of adverse possession by the plaintiff are shown to have been present. The knowledge that he acquired in or prior to 1939 as to the outstanding title did not relate back to the time of his entry in 1927, and his bona fides in such entry was unaffected thereby. There was conflicting testimony as to whether or not the plaintiff was apprised of the outstanding title before the defendant procured her deed in 1939; but, even if he was aware of the outstanding title in 1939, which fact he denied, that fact would not, under the authorities above cited, necessarily militate against him. If in fact he honestly believed, as his uncontroverted testimony shows, that he was acquiring a good title from Brunswick Peninsula Company in 1927, and thus entered into possession with all the elements of adverse

856

possession thereafter present, he had an inchoate title which could ripen into a good title in seven years. *Fraser* v. *Dolvin,* 199 *Ga.* 638 (34 S. E. 2d, 875).

The evidence for the plaintiff showing that he purchased the land in good faith and entered possession in 1927, and the evidence for the defendant merely showing that the plaintiff knew of the outstanding title of William Baywell before the defendant procured her deed in 1939, the verdict for the defendant is without evidence to support it, and the trial judge erred in not granting a new trial. *Judgment reversed. All the Justices concur.*